[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action claiming a dissolution of marriage and other relief which was brought to the court on August 15 of the year 2000. The return date was August 29, 2000. Both parties have appeared through counsel and the case was tried before the court over the course of several days. The evidence and arguments were concluded on December 5, 2002.
The court makes the following findings:
The court finds that service is properly established. The court further finds that the parties were married on December 18, 1976. Both parties and their children have resided in the state of Connecticut since that time. There were three children born to the parties, all daughters, two of whom were twins. The children have all reached the age of majority. The remaining allegations of the complaint are found to have been proven.
The plaintiff Rhonda Reiner was twenty-one years old at the time of the parties' marriage in 1976. She is Presently forty-seven years of age. When the parties met, she was a student at Central Connecticut State University. She did graduate with a degree. She was employed for a brief time in real estate prior to the birth of her first child in 1981. She did not work subsequently until approximately 1995 at which time she had some part-time employment. Her employment was in advertising sales for a small local publication. She has not worked in any significant employment outside of the home since the date of the marriage but does have a limited earning capacity which the court finds to be $15,000.00 per year.
The defendant is forty-nine years of age. He is also a college graduate, having received a business degree from the University of Hartford. He began working in his family's business upon his graduation which coincided roughly with the marriage of the parties. He is still engaged in that same business. He earns $260,000.00 per year in CT Page 179 increments of $5,000.00 per week from Intertown Realty Company. He is paid as an independent contractor.
Intertown Realty Company is a company which manages rental properties owned by the defendant's parents, either individually or in trust, and properties owned by the defendant and his brother. The basic structure of Intertown Realty Company is that it collects all of the gross receipts, pays all of the expenses in connection with the aforementioned properties and also collects a management fee from each of the properties. Intertown Realty Company consists of the defendant, his brother Michael D. Reiner, his mother Eleanore B. Reiner and until recently, his father Leo P. Reiner, now deceased. In addition to his income as described above, the defendant receives $500.00 per month from properties that he owns in Collinsville and Avon. Those properties are owned with his brother.
The defendant's finances are relatively involved. His payments from Intertown Realty Company is the main source of his income. However, he does enjoy other benefits from the company such as a car, and a credit card which are difficult to translate directly into income amounts. He deducts a substantial amount of personal expenses as business expense. As an example, he deducts partial payments for all of the motor vehicles that he uses for his home. His 2000 BMW automobile is leased by Intertown Realty which makes the payments on his behalf. In addition, some portion of the credit cards used by his children are also taken as business deductions. Those factors combine to make the exact amount of the defendant's income difficult if not impossible to ascertain. However, it is clear that the defendant has at his disposal substantially greater assets and means than does the plaintiff. He also has superior vocational and employment skills, when compared to those of the plaintiff.
Both parties attribute the cause of the breakdown of the marriage to the other. Mrs. Reiner has testified that the marriage was marked by a history of substance abuse on the part of her husband. This consisted primarily of abusing marijuana which she describes as a longstanding persistent problem. She also describes Mr. Reiner as having been verbally, physically and psychologically abusive. She describes him as being demeaning to her in the presence of other people as well as her own children. She describes him as having been disinterested in his children, being constantly late for their activities. She alleges infidelity. She claims her husband had given her a sexually transmitted disease. She alleges his having engaged in a number of untoward acts during the pendency of the divorce including tearing up the newspaper before she could read it and urinating in her coffee.
Mr. Reiner describes his marriage in parallel terms. He describes Mrs. CT Page 180 Reiner as having been a fairly good mother but not a good wife. He indicates that he did take an active interest in the children and did participate in their transportation and school activities. He believes that his wife has had a number of extramarital affairs. He claims that he has seen her with other people, that she has met men during exercise classes, on vacation, and in other places. He indicates that Mrs. Reiner also called him names and was demeaning to him throughout the course of their marriage. He alleges that Mrs. Reiner has a substance abuse problem in abusing prescription medication. The allegation is confirmed by the testimony of her physician. Mr. Reiner indicates that her refusal to work was a major source of discord during the marriage. He says that he constantly asked her to work so that she would make a contribution to the household and improve herself and her self esteem. Mrs. Reiner indicates that her lack of outside employment was not an issue. He indicates that her time was taken up mostly with playing tennis, exercise, and shopping. He accuses his wife of having transmitted herpes to him.
During the course of the marriage of the parties, it was their practice to use charge cards. Mrs. Reiner would charge any and all expenses relative to the household and her activities, including clothing, shopping, and even groceries. It was also their practice that the children had charge cards as well. Mrs. Reiner stated the children had charge cards from the time they were thirteen. Mr. Reiner traditionally paid all of the charge bills.
The family spent money essentially without reservation. They have no savings and have no life insurance to speak of relative to their income and lifestyle. They traveled extensively on vacations, and dined out frequently. They have five automobiles. They are members of the Tumblebrook Country Club.
Mrs. Reiner indicates that when she would inquire about life insurance, retirement, or funds for the children's education she was always told that she should not worry about it. She was further told chat the parties had investments in real estate and that those investments would provide for the expenses that were forthcoming.
The majority of the assets are in the form of real estate. Aside from the marital home which is located at 82 Talcott Notch Road in Farmington, all other real estate is owned by Mr. Reiner either individually, or in association with his brother.
Based upon the evidence submitted, which includes the testimony and reports of appraisers and real estate agents, the court makes the following findings with respect to the values of the properties in which CT Page 181 the parties have an interest:
3-7 Johnson Fair market value — $151,500.00
Present Mortgage (104,500.00)
14-27 Center Street Fair market value — $400,000.00
Present Mortgage (168,500.00)
114 Huckleberry Fair market value — $522,000.00
Present Mortgage (451,300.00)
Collinswood Associates Fair market value — $521,078.00
Present Mortgage (356,500.00)
The properties listed above are owned by the defendant with his brother, his interest being fifty percent (50%)
33 Sherman Avenue Fair market value $200,000.00
Mortgage (132,500.00)
This property is owned entirely by the defendant.
Talcott Notch Road Fair market value $715,000.00
Present Mortgage (171,900.00)
This property is the marital home owned jointly by the parties.
After considering the provisions of the Connecticut General Statutes relevant to this matter, the court makes the following orders and further findings:
The marriage of the parties is hereby dissolved.
The defendant shall pay alimony to the plaintiff in the amount of $1,350.00 per week. The alimony shall terminate upon the death of either party or the remarriage of the plaintiff.
The defendant shall continue to provide medical insurance for the benefit of the plaintiff pursuant to the provisions of COBRA for the CT Page 182 maximum term allowable at his expense.
The defendant shall transfer to the plaintiff the 1999 Lexus automobile. He shall continue to pay the loan secured by that automobile according to its tenor. The plaintiff shall be responsible for registration, maintenance, taxes and insurance effective February 01, 2003. The defendant shall convey title to the automobile to the plaintiff upon the full payment of that loan.
The plaintiff shall transfer to the defendant all of her right, title and interest in the property known as 82 Talcott Notch Road, Farmington, Connecticut. The defendant shall pay to the plaintiff the sum of $271,550.00 as consideration for that transfer on or before sixty days from the date of this judgment.
The plaintiff shall vacate the home no later than thirty days from the payment of said sum.
The defendant shall pay to the plaintiff the sum of $200,000.00 as lump sum alimony. The sum shall be secured by an interest in the partnerships in which the defendant has an interest and by mortgages on the real estate owned in whole or in part by the defendant sufficient to secure said sum. This sum shall be payable in installments of $20,000.00 due on July 1 and January 1 until paid in full. This obligation shall not terminate upon the death of either party. Any installment not paid as due will bear interest at the rate of 12% per annum.
The defendant shall retain his interest in the Wilson Street property free of any claim or interest in the plaintiff.
The defendant will retain his interest in the properties owned by him individually and in association with his brother free of any claim or interest by the plaintiff, unless otherwise stated in this judgment.
The defendant shall convey to the plaintiff the Webster Bank Certificate of Deposit Account #16400119852 listed on his financial affidavit.
The parties' personal property shall be equally divided among them. They are referred to Family Relations for the purpose of mediation as to any personal property not divided by agreement. The court will retain jurisdiction in the event that the mediation is not successful.
The parties shall retain assets as listed on their respective financial affidavits and pay such':debts as may be listed unless otherwise ordered CT Page 183 above.
As to the issue of an educational support order, the defendant is a trustee in several trusts that were established by his mother and his recently deceased father. The trusts are owners of substantial assets in the form of real estate. The defendant's brother is the co-trustee and the defendant's sister is described in said instruments as a "special trustee." The trusts are described by Attorney Donald W. Anderson who prepared the instruments as "discretionary trusts." While the defendant has no right to the benefits of the trust, the defendant's mother can, at her discretion, distribute funds. The beneficiaries of the trusts are the grandchildren of Leo and Eleanore Reiner, which include the children of these parties.
It is possible that the defendant could ask his brother for distribution as set out in the trust agreement. There is no evidence that he has done so or that his request would be granted or denied. However, the existence of the trusts and the fact that the children are the beneficiaries, and the other orders as entered herein mitigate against the entry of an educational support order as requested by the defendant.
BY THE COURT
 ___________________ ANTONIO C. ROBAINA, J.
CT Page 184